# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**TRESSA PATTERSON o/b/o**
**TJP, a minor,**

      **Plaintiff,**                     **CIVIL ACTION NO. 09-CV-11621**

   vs.

                                     **DISTRICT JUDGE ROBERT H. CLELAND**

**COMMISSIONER OF**                 **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

      **Defendant.**
_____/

## REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION:** Defendant's Motion for Summary Judgment (docket no. 14) should be GRANTED and Plaintiff's Motion for Summary Judgment (docket no. 9) should be DENIED, as there was substantial evidence on the record to support the Administrative Law Judge's decision to deny Social Security Supplemental Security Income.

\*\*\*

**II.**    **PROCEDURAL HISTORY**

Claimant "TJP" is a minor born on February 5, 2001. (TR 66). TJP's mother, Plaintiff Tressa Patterson, filed an application for Social Security Supplemental Security Income (SSI) childhood disability benefits on TJP's behalf on October 13, 2004 alleging that TJP had been disabled since February 5, 2001 due to asthma. (TR 56-59, 66). The Social Security Administration denied benefits. (TR 52-55). A requested *de novo* hearing was held via video on April 14, 2008, before Administrative Law Judge (ALJ) Allyn Brooks, who subsequently found that Claimant was not entitled to disability benefits. (TR 15). Plaintiff and Claimant testified at the hearing. In a

decision dated August 19, 2008 the ALJ determined that Claimant was not entitled to childhood disability benefits because she did not have an impairment or combination of impairments that meets, medically equals or functionally equals any of those found in the Listing of Impairments. (TR 24). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review. (TR 4-6). The parties filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of childhood Supplemental Security Income was supported by substantial evidence on the record.

### III. PLAINTIFF'S AND CLAIMANT'S TESTIMONY AND MEDICAL EVIDENCE

#### A. Testimony

Plaintiff, TJP's mother, testified at the administrative hearing that she takes TJP to the doctor when TJP will not eat, has a fever, breathes fast and hard and is not improved by using the nebulizer at home. (TR 315). Plaintiff testified that in the prior year TJP had been to the doctor's office or hospital at least eight or nine times. (TR 313-14). Plaintiff testified that at the doctor's office TJP usually gets a nebulizer treatment and is prescribed steroids for two to three days if her lungs are not strong enough. (TR 314). TJP is able to use her inhaler herself if she feels something "coming on." (TR 315). TJP testified that when she uses her inhaler she is able to take deeper breaths within a short period of time. (TR 317).

TJP testified that she has to stay inside for recess but in gym class she can play all of the games with her class. (TR 319). TJP testified that if she runs out of breath, she can get a drink or take a rest. (TR 319). TJP testified that her favorite thing about school is going to the computer center. (TR 326). Plaintiff testified that TJP has not had intravenous treatment for asthma since she was a few months old. (TR 320).

### B. Medical Evidence

TJP suffers from asthma. As set forth in detail below, the record shows that TJP sought treatment for coughing, congestion, ear pain, sore throat and respiratory infections throughout the time period at issue. Following an SPB Bone Age Study dated July 19, 2005, it was determined that TJP's "bone age is advanced by 16 months in relation to [her] chronological age" but it was "still within the range of normal variation which is +/- 20 months for two standard deviations." (TR 197, 264-65). On February 11, 2005 TJP was examined by Charles N. Ellis, M.D., for hyperpigmented patches on her bilateral dorsal feet and left dorsal hand. (TR 217). Dr. Ellis concluded that TJP's symptoms were consistent with "post inflammatory changes secondary to eczematous dermatitis" and recommended the use of Valisone lotion. (TR 217-28).

### IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

After finding that Claimant had never performed substantial gainful activity, the ALJ determined that Claimant has asthma, a severe impairment, but that the impairment did not meet or medically equal any of those found in the Listing of Impairments. (TR 18). Moreover, the ALJ found that Claimant's impairment did not "functionally equal" the Listing because Claimant did not have an impairment or combination of impairments that resulted in marked and severe functional limitations.

### V. LAW AND ANALYSIS

#### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal

standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this court to try cases *de novo*, or resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Her v. Commissioner*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the courts").

**B.     Eligibility For SSI Childhood Disability Benefits**

A child will be considered disabled if he has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations."  42 U.S.C. § 1382c(a)(3)(C)(I).  To determine whether a child's impairments result in marked and severe

limitations, Social Security Administration (SSA) regulations prescribe a three step sequential evaluation process:

> 1. A child will be found "not disabled" if he engages in substantial gainful activity.
>
> 2. A child will be found "not disabled" if he does not have a severe impairment or combination of impairments.
>
> 3. A child will be found "disabled" if he has an impairment or combination of impairments that meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1. 20 C.F.R. § 416.924(a)-(d) (2010).

To determine whether a child's impairment(s) functionally equals the listings, the SSA will assess the functional limitations caused by the child's impairment(s). 20 C.F.R. § 416.926a(a)(2010). The SSA will consider how a child functions in six domains:

> 1. Acquiring and using information;
>
> 2. Attending and completing tasks;
>
> 3. Interacting and relating with others;
>
> 4. Moving about and manipulating objects;
>
> 5. Caring for yourself; and
>
> 6. Heath and physical-being. 20 C.F.R. § 416.926a(b)(1).

If a child's impairments result in "marked" limitations in two domains, or an "extreme" limitation in one domain,[1] the impairment functionally equals the listing and the child will be found disabled. 20 C.F.R. § 416.926a(d).

---

[1] A marked limitation is one that "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). An extreme limitation is one that "interferes very seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3).

-5-

C.      Analysis

The issue is whether there was substantial evidence in the record to support the ALJ's decision denying the application for Supplemental Security Income. Plaintiff argues that the ALJ "erred as a matter of law by failing to find that TJP has a severe limitation in health and physical well-being." (Docket no. 9). Plaintiff's only argument on appeal and which has developed in her Motion for Summary Judgment is that the ALJ erred when he determined that there was a "less than marked limitation" in the domain of health and physical well-being. (Docket no. 9 at 6).

Despite Plaintiff framing her legal issue as a failure to find a "severe limitation in health and physical well-being," Plaintiff's use of the term "severe" is ambiguous in this instance. At step two of the determination, the ALJ found that TJP has the severe impairment of asthma. 20 C.F.R. § 416.924(c). (TR 18). A finding of a severe impairment at step two does not automatically equate to a finding of disability or disabling impairment. 20 C.F.R. § 416.924(c), (d). The ALJ correctly went on to make a step three determination. 20 C.F.R. § 416.924(d). It appears that Plaintiff's sole argument is that at step three of the determination, the ALJ erred in failing to find that Plaintiff suffered an "extreme" limitation in physical health and well-being.

At step three, the ALJ found that TJP's medical impairment, asthma, does not meet or medically equal the Listing for asthma. 20 C.F.R. Part 404, Subpart P, App. 1. 20 C.F.R. § 416.924(a)-(d) (2007). Plaintiff does not argue that TJP's asthma meets or medically equals the Listing. That issue is effectively waived. *Young v. Sec. of Health and Human Servs.*, 925 F.2d 146, 149 (6th Cir. 1990) (Plaintiff "cannot raise an issue before the court of appeals that was not raised before the district court."); *see also United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999)

(citations omitted) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived, . . . .").

The ALJ's step three determination did not end there, however, and the ALJ properly considered whether TJP's asthma functionally met the Listing. 20 C.F.R. § 416.924(d). The ALJ considered each of the six domains of functionality. 20 C.F.R. § 416.926a(b)(1). The ALJ found that Plaintiff is not limited in the first five of the six domains: Acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects and caring for ones self. (TR 19-23). In his discussion of each of these domains the ALJ simply states "[n]o problems are alleged or documented in this domain." Despite the brevity of the ALJ's conclusion in each of these five domains, the record supports his conclusion. Indeed, no problems are alleged or documented and Plaintiff has not argued any error with respect to the first five domains of functioning.

With respect to the sixth domain, the ALJ found that Plaintiff has less than marked limitation in health and physical well-being. (TR 23). 20 C.F.R. § 416.926a(b)(1)(vi). This is the only finding which Plaintiff challenges. (Docket no. 9). Plaintiff argues that the medical records support a finding that Plaintiff suffers from a "severe limitation in the domain of health and physical well-being." (Docket no. 9). Plaintiff cites TJP's clinical examinations between August 8, 2001 and October 18, 2006 as evidence that the ALJ erred in determining that TJP has less than marked limitation in health and physical well-being.

Because Plaintiff's appeal relates solely to the ALJ's finding in the domain of one functional limitation, Plaintiff's argument must be read as alleging that the ALJ failed to find that TJP suffers an "extreme" limitation in health and physical well-being. To find that an impairment functionally

equals the listing, thereby resulting in disability, the claimant must have "marked" limitations in two or more domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d).

As an initial matter, the Court addresses of Plaintiff's argument that the "ALJ did not even mention the agency physician's determination that there was at least a 'marked' limitation in the domain of health and physical well-being . . . ." (Docket no. 9 at 9). Shanda Sood, M.D., pediatrics, completed two Childhood Disability Evaluation Forms. (TR 255-60). The date on the form to which Plaintiff refers is not clear, but in it, Dr. Sood references medical evidence from December 2004 through August 2005[2]. (TR 258). The consultant concluded that Plaintiff has no limitations in the first five functional domains and has a marked limitation in health and physical well-being. (TR 258). The ALJ referenced an earlier opinion by Dr. Sood from December 20, 2004 on page 5 of his opinion. (TR 181-85). The opinion which Plaintiff references is consistent with the ALJ's findings except in the domain of health and physical well-being. Even if the ALJ had erred in failing to adopt the consultant's later determination in full, had the ALJ adopted the findings in full it would have resulted in "marked" limitation in only one functional domain. This error is harmless because only one "marked" limitation does not establish that claimant functionally met the Listing. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001) (harmless error does not warrant remand).

With respect to the remainder of Plaintiff's argument, the regulations include domain descriptions that include examples of the activities typical of children within that each age group and

---

[2] The Court notes that despite the index in the transcript and a handwritten on the on the front of the form noting that the assessment form was from "2/11/05," the date line next to Dr. Sood's signature is ambiguous in showing only "9-22-." (TR 256). Because this opinion references medical records from August 2005, it must post-date both the December 2004 opinion and the February 11, 2005 date assigned to it. (TR 258).

some of the functional limitations which may be considered. 20 C.F.R. § 416.926a(f)(3). The domain of health and physical well-being considers the "cumulative physical effects of physical or mental impairments and their associated treatments or therapies on . . . functioning that we did not consider in paragraph (j) of this section." 20 C.F.R. 416.926a(l). Some examples of limitations in the domain of health and physical well-being include limitations in physical functioning due to treatment, for example nebulizer treatments.

The domain of health and physical well-being also considers the frequency of illness or exacerbation of the impairment(s) that result in significant, documented symptoms or signs. 20 C.F.R. § 416.926a(e)(2)(iv). A "marked" limitation in this domain may include frequent illness due to the impairment(s) or frequent exacerbations of the impairment(s) that result in significant documented symptoms or signs. "Frequent" is defined as "episodes of illness or exacerbations that occur on an average of 3 times a year, or once every 4 months, each lasting 2 weeks or more." 20 C.F.R. 416.926a(e)(2)(iv). A finding of "marked" limitation may also be made if there are "episodes that occur more often than 3 times in a year or once every 4 months but do not last for 2 weeks, or occur less often than an average of 3 times a year or once every 4 months but last longer than 2 weeks, if the overall effect (based on the length of the episode(s) or its frequency) is equivalent in severity." *Id.*

The ALJ's finding that Plaintiff suffered less than marked limitations in health and physical well-being is consistent with the record. As the ALJ pointed out, TJP has had asthma since she was one year old. Despite the frequency of office exams and the use of an after hours clinic when the doctor's office was closed, there have been no hospital admissions, the frequency and length of

illness and/or exacerbations does not meet that of an extreme, or marked, limitation, and there is no evidence of marked limitation on TJP's functioning due to treatment.

From May through September 2001 TJP was treated for complaints of congestion and coughing, and in September was diagnosed with bronchitis. (TR 141-42). TJP was also reportedly pulling at her ears. (TR 150-51). On August 8, 2001 occasional wheezing was noted by the examiner. (TR 146). In September 2001 the treatment provider noted increased respiratory effort and wheezing. (TR 142). TJP was taking Albuterol and Intal. (TR 140-41). On October 26, 2001 TJP was diagnosed with acute bronchospasm but it was noted that it was "improved." (TR 140). At nine months of age, the treatment provider noted that Plaintiff had a past history of asthma. (TR 139). On January 14 and 30, 2002, TJP was treated for complaints including congestion, cough and rash. She was treated with Albuterol, Robitussin, and Tylenol. (TR 137-38). Treatment throughout the period from February through October 2002 was generally for cough and congestion, including an instance of clear nasal discharge and diaper rash. (TR 129-36). It was periodically noted during this period that Plaintiff was taking Albuterol and Intal. (TR 13). Treatment in 2003 was predominately for a rash, for which lotion and Lotrimin were prescribed. (TR 124-27). On May 8, 2003, however, Plaintiff's asthma was noted as "stable" during a well-child exam. (TR 128). Plaintiff's asthma was reported on May 8, 2003 as "mild intermittent." (TR 115).

The ALJ pointed out that TJP had fifteen trips to the doctor in 2004 and 2005 related to her asthmatic condition, yet again predominately for nasal congestion, cough, respiratory infection, and sore throat. (TR 19, 310). Wheezing was noted on examination by the treatment provider on February 23, 24, 27, April 29 and September 24, 2004. (TR 113-123, 160-71). On April 29, 2004 Plaintiff was diagnosed with pharyngitis and prescribed Zithromax. (TR 120). Plaintiff took TJP

-10-

to the emergency room on April 25 and July 18, 2004 with complaints of fever and sore throat both times. (TR 84, 99). On both occasions, on examination TJP's lungs were noted to be clear, with breath sounds equal and "no grunting/flaring/retractions." (TR 84, 99). TJP was examined twice in December 2004 and both times her respiratory distress score was 0. (TR 233, 235). An x-ray dated December 24, 2004 showed infiltrations in the left lower lobe and the rest of the lung fields were clear. (TR 248, 251).

The ALJ's findings are also consistent with the opinion of Elaine Kountanis, M.D., neurology, who performed a neurological examination of TJP on November 29, 2004 when TJP was three years and 9 months of age. (TR 177-79). Dr. Kountanis reported that TJP's last hospitalization for asthma was in 2002 and in October 2004 TJP reported to the doctor's office following "an acute attack of asthma associated with upper respiratory illness." (TR 177). Dr. Kountanis reported that TJP was given a NEB treatment in the office and three days of oral steroids. (TR 177). The doctor also pointed out that Plaintiff reported that TJP treats with NEBS for to five times a day and the last treatment had been the prior evening. At the time of the 2:30 p.m. examination, Claimant had not yet had a NEBS treatment. (TR 177).

Dr. Kountanis reported that TJP appeared bright and that her mother reported that she is a bright child. (TR 178). The doctor also reported that at rest, TJP "had clear breath sounds to the bases" and "[a]fter running in the hallway about 200 feet she began to cough repeatedly but there was no wheezing noted." (TR 178). The doctor found that this was consistent with exercise induced asthma but that there was "no wheezing noted on the exam though at rest or after exercising." (TR 178). The doctor reported that TJP's asthma is also triggered by smoke, pungent smells and winter weather. (TR 177). The doctor reported that on examination TJP had good coordination, muscle

tone, hearing and seeing. (TR 178). Dr. Kountanis concluded that TJP's prognosis is "good." (TR 178).

Sharda Sood, M.D., pediatrician, completed Childhood Disability Evaluation Form dated December 20, 2004 on which she concluded that TJP had asthma, but had "no" limitations in the first five functional areas and had a "less than marked" limitation in the are of health and physical well-being, noting Dr. Kountanis's report that TJP had "persistent coughing triggered after running in the hallway" with "no wheezing noted." (TR 181-85).

Despite multiple office visits in 2005, TJP's asthma continued to be described as "mild" yet "persistent" by the treatment providers, including in September and October 2005. (TR 206, 223-31). In January 2005 TJP was advised to continue with Albuterol twice per day. (TR 200). Wheezing was noted on examination in August 2005. (TR 224). In October 2005 TJP was prescribed Pulmicort twice per day. (TR 207-08). On November 28, 2005 TJP reported cough with wheezing which started on November 25, 2005. (TR 214). X-rays of the sinuses were taken and were normal. (TR 214-15, 232). In December 2005 a course of prednisone was discontinued. (TR 216).

The record does not show wheezing noted on examinations in 2006. (TR 274-88). On April 14, 2006 the doctor prescribed an Albuterol inhaler for TJP to use if necessary during an upcoming three-hour flight, rather than using her breathing machine. (TR 278-79). TJP was also treated during 2006 for puffy eyes, rashes and allergic reactions. (TR 286-87). On May 23, 2006 TJP was examined by Kamal Mohan, M.D., who found, following skin testing with common aero-allergens, that TJP tested positive for trees, outdoor molds and eggs and slightly positive for peanuts. (TR 293). TJP was advised to avoid eggs and peanuts completely, use an EpiPen Jr., in the event of

ingestion of either, and continue Pulmicort breathing treatment twice per day and Albuterol breathing treatment on a PRN basis. (TR 293). At an examination on April 25, 2007 TJP's asthma was again described as "mild" and "persistent." (TR 304). At a well-child exam on April 28, 2008 the examiner reported that TJP's asthma was "controlled." (TR 300).

Per Plaintiff's report on October 25, 2004, TJP had wheezing but had never had an asthma attack because Plaintiff catches it "in time." (TR 69). At that time, Plaintiff reported that TJP took Albuterol Sulfate every 2-4 hours, Pulmicort twice per day, Singulair one 4 mg tablet per day, and in October 2004 had been prescribed Prelone/Prednisone twice per day for three days. (TR 70). Plaintiff reported that TJP used a breathing machine every two to four hours. (TR 70). There is not substantial evidence of the treatment or the frequency or length of TJP's illness and/or exacerbations having a marked or extreme limitation on TJP's functioning. Although TJP's doctor restricted her from going outside for recess when the whether is below 60 degrees, TJP is still active in gym class and she testified that she can play all of the games her class plays. (TR 319).

The ALJ's finding at step three that TJP's impairment does not functionally equal a Listing is supported by substantial evidence, including his finding that TJP has less than marked limitations in health and physical well-being.

## VI.     CONCLUSION

The ALJ's decision to deny benefits is based on substantial evidence in the record. Accordingly, Plaintiff's Motion for Summary Judgment (docket no. 9) should be denied, that of Defendant (docket no. 14) granted, and the instant Complaint dismissed.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: May 6, 2010
s/ Mona K. Majzoub
MONA K. MAJZOUB
UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: May 6, 2010
s/ Lisa C. Bartlett
Case Manager